## JAMES BOIES *vs.* BILLINGS BLAKE.

By the *stat.* of 1824, *ch.* 271, a sale to a foreigner of trees, timber or grass standing or growing on the *Passamaquoddy Indian Township*, whether made by the agent. or by a citizen of this State who had purchased of the agent, is void, and transfers no title to such foreigner.

Where the *Indian* agent, F., gave to *D.* a written license to cut all the grass on such township, with a provision in the license, that it was understood, that D. was to permit B. to cut a certain specified portion thereof for a reasonable compensation; and B. offered to D. such reasonable compensation, who refused to receive it, and afterwards transferred his right and interest under the license to a foreigner; B. cut the grass, made it into hay, and stacked it: *it was held*, that B. had such interest in the hay, as would enable him to maintain trespass against a foreigner acting under such transfer.

THIS was an action of *trespass* for a certain quantity of hay cut on the *Huntly brook meadow* in the *Indian* township in this County, and was tried before *Weston C. J.*

It appeared, that the plaintiff had cut and stacked the hay on that meadow in the season of 1832, and that the defendant, who was a resident in the Province of *New-Brunswick*, and in the employment of one *Marks*, a British subject, took and carried away the hay the winter following. It did not certainly appear, when the hay was cut, but it was not proved to have been cut in the month of *August*. The plaintiff claimed a right to cut and take the hay by virtue of a reservation in the permit, license, or sale, dated *July* 14, 1834, given by *James Farnsworth*, the Indian agent, to one *Dudley*. By this the agent gave *Dudley* " permission to go on to the Indian township and cut and commit to his own use all the grass usually denominated meadow hay." The writing contained these provisions. " It is further understood, that the said *Dudley* is to permit *James Boies* to cut two small meadows on the *Huntly brook* for a reasonable consideration," and " the said *Dudley* is not to allow any foreigner to have any control directly or indirectly of the management of said premises under the penalty of being considered a trespasser from the beginning." On the 29th of *August*, 1832, *Dudley* sold to the defendant " all his right and interest" by the permit or license of the Indian agent of *July* 14, 1832. It appeared, that the plaintiff, prior to the 29th of *August*, 1832, had offered to pay

to *Dudley* a reasonable compensation for the hay reserved for him, which *Dudley* declined to receive. The defendant relied on the transfer of *Dudley* to him, of *August* 29, 1832. The jury returned their verdict for the plaintiff, which was to be set aside, if the Court should be of opinion, that the action could not be maintained.

*Bridges*, for the defendant.

The plaintiff brings an action of trespass, and to sustain it, he must have a right to the immediate possession of the property, and must show a direct and immediate tortious taking. 5 *Dane*, 533; *Graham* v. *Peat*, 1 *East*, 244. The most favorable case for the plaintiff is, that *Farnsworth*, the Indian agent, sells the grass on the Indian township to *Dudley*, with this provision, that *Dudley* should permit *Boies* to have this grass for a reasonable compensation to be paid by him to *Dudley*. The grass then is *Dudley's*, and he did not sell it to *Boies*, but to *Marks*, under whom the defendant acted. The tender by the plaintiff to *Dudley* did not vest the grass in him. The assent of *Dudley* was necessary, and that assent was never given. No person can maintain an action of trespass in consequence of a contract between two other persons. *Hornbeck* v. *Westbrook*, 9 *Johns. R.* 73. A reservation in a deed to a stranger is void. A price was to be agreed on, and a sale to be made, before the plaintiff could acquire a property in the grass. 4 *Dane*, 109; *Co. Lit.* 47; *Hunter* v. *Rice*, 15 *East*, 99. The case finds, that the plaintiff offered to pay *Dudley* for the grass, but this was not a tender, or equivalent to it. If a tender would have transferred the property, it was not made. *Brown* v. *Gilmore*, 8 *Greenl.* 107.

The statute says, that no grass growing on the Indian township shall be sold to a citizen or subject of a foreign country. *Blake* was but a mere resident in *New-Brunswick*, but if he was a British subject, and the contract void, it left the property in *Dudley*, and did not pass it to the plaintiff, and he cannot maintain the action.

*Chase*, for the plaintiff.

By the contract between the agent and *Dudley*, the latter was not entitled to this grass, except on the contingency, of the failure

of the plaintiff, to whom it was reserved, to comply with the condition. The plaintiff did comply with the condition by offering to pay, as required in the contract. The reservation was binding before upon *Dudley*, and he could not avoid it without the consent of the other party, the agent. The offer to pay was an assent to the terms, and a compliance with them, on the part of the plaintiff. *Dudley* could derive no title to this grass, by violating the contract and disregarding his duty. If the defendant stood in the place of *Dudley*, he would have no defence. He must make out a title to take this hay first. He fails to do this, both because the acts of the parties gave the title to it to the plaintiff, and because *Dudley* had forfeited all right, if he ever had any, by the violation of the terms and spirit of his contract.

The possession of the hay gives the plaintiff the right to maintain trespass against any, but the true owner. The defendant and *Marks*, under whom he acted, are British subjects, and could derive no title to this grass even from the strongest writing the agent himself could have given. The *stat.* of 1824, *ch.* 271, positively forbids such sale. But the contract and the law here both forbid it, for the agent inserted the provision of the statute on this subject, as a part of the contract. A contract made in violation of a statute is void. *Armstrong* v. *Toler*, 11 *Wheat.* 298; *Wheeler* v. *Russell*, 17 *Mass. R.* 258.

After a continuance, the opinion of the Court was drawn up by

WESTON C. J. — *James Farnsworth*, the agent of the *Passamaquoddy Indians*, had authority to dispose of the hay in controversy. The instrument in writing, between him and *John Dudley*, which is a part of this case, is evidence that when the plaintiff went in and cut the hay, he had, for so doing, the license and consent of *Farnsworth*. And it is also evidence, that *Dudley* consented thereto. This may well be understood to have been so expressed, in consequence of a previous understanding between *Farnsworth* and the plaintiff. By the written agreement referred to, a specific portion of the grass, by a description well understood, is set apart for his benefit. It is equivalent to a declaration of trust to that extent in his favor. The plaintiff, however, was

to pay a reasonable compensation to *Dudley*. This was offered by the plaintiff, but *Dudley* refused to receive it.

It has been insisted, that the actual receipt of the money by *Dudley*, was necessary to entitle the plaintiff to the hay, to sustain which position, the counsel for the defendant has cited the case of *Hunter* v. *Rice*, 15 *East*, 99. The plaintiff there, and one *Sharpe*, had entered into bonds to submit to the award of arbitrators. They awarded among other things, that the plaintiff should have certain hay belonging to *Sharpe*, upon being paid or allowed a certain sum of money. The money was tendered by the plaintiff, but refused by *Sharpe*, who declined to execute the award. The question was, whether the property in the hay passed by the award. The court held, that it did not and that the only remedy for the plaintiff was upon the award, but added that if *Sharpe* had received the money, it would have been such an assent on his part to the award, as would have amounted to a transfer of the property. Here the receipt of the money was not necessary to prove that either *Farnsworth* or *Dudley* had consented, that the plaintiff should have the hay. That had been before distinctly expressed in the written agreement. The tender made by the plaintiff, so far as it affected the transfer of the hay, was equivalent to payment. From the evidence in the case, it may be fairly inferred, that *Farnsworth* and *Dudley* had agreed to sell the hay to the plaintiff, for a reasonable compensation, to be paid to *Dudley*, which was tendered by the plaintiff, who thereupon took the hay.

It is further urged, that the plaintiff is a stranger to the agreement, made between *Farnsworth* and *Dudley*, and cannot take advantage of any thing there stipulated for his benefit. In *Martyn* v. *Hinde, Cowper*, 437, the plaintiff sustained an action against the defendant, rector of *St. Anne's, Westminster*, upon a certificate addressed by the defendant to the *Bishop*, wherein he nominated the plaintiff his curate, and promised to allow him £50, per annum, until otherwise provided for. And in *Marchington* v. *Vernon*, 1 *Bos. & Pul.* 101, *note b. Buller J.* says, " if one person makes a promise to another, for the benefit of a third, the third may maintain an action upon it."

But if there were difficulties attending the plaintiff's title to the hay, he had cut it, and had it in actual possession. He might therefore maintain trespass against a wrongdoer for taking it away.

By the *statute* of 1824, *ch.* 271, no citizen or subject of any foreign government, can be permitted to purchase, cut or carry away any trees, timber, or grass standing or growing on the township, reserved for the *Passamaquoddy Indians;* and the agent, who presumes to permit it, is subject to a forfeiture. And accordingly in the agreement between *Farnsworth* and *Dudley,* it is provided, that *Dudley* is not to allow any foreigner to have any control or management, directly or indirectly, either in the hay or the timber, which *Dudley* was thereby permitted to cut, under the penalty of being considered a trespasser from the beginning. And yet it appears, that *Dudley* assigned all his right, title and interest in that instrument, and the permit it contained, to the defendant, who was then a resident in the *British province* of *New-Brunswick,* and in the employment of one *Marks,* a *British subject.* This was not only in violation of law, but in direct violation of the express terms of the contract, under an asssignment of which the defendant justifies. We are very clear, that under these facts, the defendant has made out no title whatever to the hay in controversy ; and that as against him, the possession of the plaintiff is sufficient evidence of title, to enable him to maintain the action.

*Judgment on the verdict.*